# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WILLIE T. SMITH,<br><br>               Plaintiff,<br><br>v.<br><br>D. JONES, *et al.*,<br><br>               Defendants. | Case No. 3:20-CV-00504-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 62] |

This case involves a civil rights action filed by Plaintiff Willie T. Smith ("Smith") against Defendants Nurse Dawn Jones ("Jones"), Keli Lyons ("Lyons"), and Michael Minev ("Minev") (collectively referred to as "Defendants").[2] Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 62, 64, 72.)[3] On July 6, 2022, the Court gave Smith notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). (ECF No. 65.) Despite the Court *sua sponte* granting two extensions of time, (ECF Nos. 70, 75), Smith has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 62), be granted.

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Smith also named Don Adams as a defendant. On September 2, 2022, the District Court dismissed Defendant Adams after Smith failed to provide proof of service of the complaint on Adams pursuant to Fed. R. Civ. P. 4(m). (ECF No. 76.) In addition, Smith was permitted to proceed against Defendants Doe URP members and ordered to substitute the proper names for these Defendants when their true names came to light during discovery. (ECF No. 47.) Discovery has now closed, and to date, Smith failed to substitute proper defendants for these Doe URP members, nor has he sought to amend his pleading to add proper defendants. Therefore, the Court recommends that these defendants be dismissed from this action.

[3] ECF No. 64 consists of Smith's medical records filed under seal. ECF No. 72 is an Errata to Defendant's Motion for Summary Judgment, which includes several authenticating affidavits related to exhibits submitted in support of the motion for summary judgment.

## I. FACTUAL BACKGROUND

Smith is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently incarcerated at High Desert State Prison ("HDSP"). On September 4, 2020, Smith filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events relate to his dental care that occurred while he was incarcerated at the Ely State Prison ("ESP"). (ECF No. 1-1.) The facts related to this dispute, which are not disputed by Smith, are as follows.

### A.  April 4, 2019 Dentist Visit

On April 4, 2019, Smith saw an ESP dentist for an extraction of Tooth #18. (ECF Nos. 62-1 at ¶ 6; 64-1 at 3 (sealed); 72-5 (authenticating affidavit for ECF No. 64-1)). Defendant Lyons was also present during the tooth removal, in her capacity as a Dental Assistant. (ECF No. 62-1 at ¶ 6.) The roots of Smith's tooth were near the lingual nerve trunk in Smith's mouth. (ECF Nos. 62-1 at ¶ 7; 64-1 at 3 (sealed).) The dentist could not remove the tooth roots due to high risk of nerve irritation or damage. (ECF No. 62-1 at ¶ 7.) The dentist put in two sutures to help close the tooth extraction site. (ECF Nos. 62-1 at ¶ 7; 64-1 at 3 (sealed).) Smith was given an ibuprofen pain pack.[4] (ECF Nos. 64-2 at 16 (sealed); 64-3 at 16 (sealed); 72-5 (authenticating affidavit for ECF Nos. 64-2).)

### B.  April 10 and April 11, 2019 Infirmary Visit

On April 7, 2019, Smith was started on Pen VK (a/k/a Penicillin V Potassium)[5] and given an ibuprofen pain pack by a non-defendant NDOC medical provider. (ECF Nos. 64-2 at 16 (sealed); 64-3 at 9 (sealed).) The next day, a non-defendant NDOC medical staff member spoke with Smith about continued pain in Smith's lower jaw due to the recent tooth extraction. (ECF Nos. 64-4 at 21 (sealed); 72-5 (authenticating

---

[4]  According to Defendant Jones, a "pain pack" consists of 24 200mg ibuprofen pills, which are meant to last for three days. (ECF No. 62-2 at ¶ 14.)

[5]  According to Defendants' Motion, Penicillin V Potassium is an antibiotic medication used to treat and prevent a wide variety of bacterial infections. https://www.webmd.com/drugs/2/drug-8686-2050/penicillin-v-potassium-oral/penicillin-v-potassium-oral/details (last visited October 21, 2022). (ECF No. 62 at 3, n. 6.)

1  affidavit for ECF No. 64-4).) The non-defendant NDOC medical staff member started
2  Smith on another antibiotic (i.e. "ABX") and ibuprofen pain pack, and the staff member
3  notified dental staff. (*Id.*)

4  On April 10, 2019, a non-defendant NDOC medical staff member attempted to
5  give Smith ibuprofen and Peridex[6] oral rinse but was unable to, due to Smith's
6  aggressive behavior. (*Id.*) Later that day, Smith was admitted to the ESP infirmary for
7  pain management involving his recent dental procedure. (ECF No. 64-2 at 15-16
8  (sealed).) He was prescribed medication for his dental pain, including Peridex oral rinse,
9  Prednisone[7], and Tylenol, along with a mechanical soft diet. (ECF Nos. 64-2 at 15-16
10 (sealed); 64-3 at 13 (sealed).)

11 On April 11, 2019, while at the infirmary, Smith refused to let the NDOC dentist
12 examine the tooth extraction site. (ECF Nos. 64-1 at 3 (sealed); 62-2 at 3, ¶ 5.) After
13 Smith refused to see the dentist, Nurse Jones received verbal orders from a non-
14 defendant NDOC medical provider to discharge Smith from the infirmary. (ECF Nos. 62-
15 2 at 3, ¶ 7; 64-4 at 21 (sealed).) Due to Smith's refusal, Nurse Jones presented him with
16 a Release of Liability for Refusal of Health Care Treatment form, hereto attached as
17 ECF No. 62-3, which Smith refused to sign. (ECF No. 72-5 (authenticating affidavit ECF
18 No. 62-3); 62-2 at 3, ¶¶ 9-10.) That same day, a non-defendant NDOC medical provider
19 discontinued the mechanical soft diet and Tylenol, but ordered that Smith continue with
20 the Peridex and Prednisone. (ECF No. 64-2 at 15 (sealed).)

### C. Follow-Up Care After April 11, 2019

22 On April 16, 2019, non-defendant NDOC medical staff examined Smith's mouth,

---

[6] Per Defendants' Motion, Peridex is a medication used to treat gingivitis. It works by decreasing the amount of bacteria in the mouth, helping to reduce swelling and redness of the gums and bleeding when brushing. https://www.webmd.com/drugs/2/drug-6402/peridex-mucousmembrane/details (last visited October 21, 2022). (ECF No. 62 at 4, n. 8.)

[7] Per Defendants' Motion, Prednisone is a medication used to reduce symptoms such as swelling and allergic-type reactions. https://www.webmd.com/drugs/2/drug-6007-9383/prednisoneoral/prednisone-oral/details (last visited October 21, 2022). (*Id.* at n. 9.)

and noticed fragments of tooth seen on the left side of his mouth. (ECF No. 64-4 at 21 (sealed).) Smith stated the pain was "7/10." (*Id.*) Medical staff gave Smith an ibuprofen pain pack and scheduled Smith to be seen by a medical provider. (*Id.*) On May 2, 2019, Smith saw a non-defendant NDOC medical provider regarding his dental pain, and was prescribed ibuprofen and Peridex mouthwash. (*Id.* at 20.) Smith was also strongly advised to follow-up with dental staff if the pain got worse. (*Id.*)

On June 3, 2019, Smith was admitted to the infirmary for tooth pain management but refused onsite dental. (*Id.* at 19.) Smith was prescribed Tylenol and a mechanical soft diet, and ordered to continue his active medications. (ECF No. 64-2 at 13 (sealed).)

On June 4, 2019, Smith was seen by a non-defendant NDOC medical staff member, and Smith had no complaints of dental pain. (ECF No. 64-4 at 19 (sealed).) The staff member noted that Smith would continue to be monitored for discomfort. (*Id.*) On June 5, 6, 9, 10, 12, 16, 17, 18, 19, 22, 24, 25, 26, 30, 2019 and on July 1 and 7, 2019, Smith was seen by medical staff members regarding dental pain management. (*Id.* at 13-19.) Smith was also prescribed pain medication twice in June of 2019. (ECF No. 64-2 at 13 (sealed).)

### D. Utilization Review Panel ("URP") Referral

#### 1. Directive Regarding the URP

Per NDOC's Medical Directive ("MD") 728, the URP consists "of the Medical Director, in addition to at least two (2) institutional practitioners, and the Utilization review Coordinator/designee, who reviews requests for medical care by an outside provider." (ECF Nos. 62-4 at 3; 72-4 (authenticating affidavit).) Dr. Minev has served on the URP since becoming the Medical Director on October 1, 2018. (ECF No. 62-5 at 2, ¶¶ 3-4.) The URP looks at several factors when considering an outside referral, such as ability of the inmate to safely perform required activities of daily living in their current environment, available resources, information obtained from second opinions and consultations, and medical evidence supporting the necessity and effectiveness of the proposed treatment in preventing or treating a serious medical condition. (ECF No. 62-4

at 3-4.) MD 728 also outlines categories of care, ranging from Level 1: Medically necessary-acute or emergent, to Level 5: Extraordinary. (*Id*. at 4.)

The URP ultimately decides to approve a referral based on "medical necessity, the seriousness of the medical issue, and current evidence based medical knowledge." (*Id*. at 5.)

### 2. Smith's URP Referral

On June 3, 2019, a non-defendant NDOC medical provider submitted a referral request to the URP for Smith to see an outside oral surgeon due to Smith's continued pain and refusal to follow-up with onsite dental. (ECF Nos. 64-5 (sealed); 72-5 (authenticating affidavit for ECF No. 64-5 (sealed); 62-5 at 3, ¶ 5.) On June 12, 2019, another non-defendant URP member deferred the referral decision, until an x-ray was taken of Smith's mouth. (ECF Nos. 64-5 (sealed); 62-5 at 3, ¶ 6.)

On June 18, 2019, the deferred decision was sent back to the ESP dentist, for x-rays to be taken. (ECF No. 62-5 at 3, ¶ 7.) On July 17, 2019, the URP approved Smith to be sent to Southern Desert Correctional Center for further dental treatment. (*Id.* at 3, ¶ 8.)

On September 11, 2019, Smith had a consult with an NDOC dentist to inspect discomfort with Smith's temporomandibular joints (TMJ).[8] (ECF No. 64-1 at 3 (sealed).) According to the note, the discomfort had subsided, and Smith was feeling fine. (*Id*.)

## II. PROCEDURAL HISTORY

On September 4, 2020, Smith initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 for events that occurred while he was incarcerated at ESP. (ECF Nos. 1, 1-1.) The original complaint was later amended by the First Amended Complaint, wherein Smith was permitted to proceed on a single Eighth Amendment deliberate indifference to serious medical needs claim against Defendants

---

[8] The temporomandibular joint is the hinge-like bone that connects a person's jaw to their skull. https://www.webmd.com/fitness-exercise/best-exercises-tmj-temporo mandibular-joint#1 (last visited October 21, 2022) (ECF No. 62 at 6, n.13.)

based on failure to provide him proper dental treatment. (ECF No. 34.)

Following an additional period of discovery, on July 6, 2022, Defendants filed their motion for summary judgment arguing Smith's claim should be dismissed because: (1) Smith failed to exhaust his administrative remedies against Defendants Lyons and Minev; (2) Defendant Lyons did not personally participate in the constitutional violations alleged in this case; (3) Smith's deliberate indifference claim fails as a matter of law; and (4) Defendants are entitled to qualified immunity. (ECF No. 30.)

Upon the filing of the motion for summary judgment, the Court issued an order advising Smith that the motion for summary judgment is dispositive and that failure to properly oppose the motion could result in dismissal of this action. (ECF No. 66.) The opposition to the motion for summary judgment was due no later than July 27, 2022. However, Smith did not file an opposition. Accordingly, on July 29, 2022, the Court *sua sponte* granted Smith an extension of time to file an opposition until August 29, 2022. (ECF No. 70.) Smith was advised that the failure to oppose would result in the motion being submitted to the Court for decision. Smith, again, did not file an opposition. The Court *sua sponte* granted Smith a final extension of time to file an opposition and again advised that the failure to file an opposition would result in the motion being submitted to the Court for decision. (ECF No. 75.) Smith again failed to oppose the motion for summary judgment. Therefore, the motion was submitted to the Court for decision without an opposition.

### III.     LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not

material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not

meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting

the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV. DISCUSSION

### A. Legal Standard - Deliberate Indifference to Serious Medical Needs

The sole claim in this case is based on Smith's allegations that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment;

the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists and make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

B.     Analysis

Starting with the objective element, Defendants concede that Smith's dental issues constituted a "serious medical need." However, Defendants argue summary judgment should be granted because Smith cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Smith's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to LeClair's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires LeClair to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, as detailed above, Defendants submitted authenticated and undisputed evidence regarding the medical treatment Smith received while incarcerated related to his dental issues. (*See* ECF Nos. 64-1, 64-2, 64-3, 64-4, 64-5 (sealed medical records); 72-5 (authenticating affidavit for sealed exhibits); 62-1, 62-2, 62-5 (affidavits and declarations of Defendants regarding medical care of Smith.)

As to Defendant Lyons, the undisputed evidence establishes that Defendant Lyons's only involvement with Smith's dental care was to serve as a dental assistant who assisted the dentist with Smith's procedures. However, there is no evidence that Lyons performed any dental surgery upon Smith or otherwise was responsible or even permitted to make medical determinations related to any tooth extractions on Smith, to prescribe medication or to otherwise decide (or refuse) to provide any dental treatment to Smith. In short, there is no evidence that Lyons knew of, or responded unreasonably, to an excessive risk to Smith's health or safety in this case.

As to Defendant Jones, the authenticated and undisputed evidence establishes

that Jones's only real involvement in this case was the fact that she was a nurse on duty in the infirmary on April 10, 2019, when Smith was admitted by non-defendant Dr. Hanf, for pain management following a dental procedure. Smith refused to allow the dentist working at ESP that day to inspect his mouth. Based on this refusal, Dr. Hanf ordered Smith to be discharged. Jones, following Dr. Hanf's order, presented Smith with the release of healthcare treatment form, based on Smith's refusal to allow the dentist to examine him. Smith refused to sign the form provided by Jones. As such, Jones and two of the ESP employees signed the form.

Sometime later, Smith was again admitted to the infirmary for pain management and Jones provided him a pain pack, which is standard nursing protocol. However, there is no evidence that Jones was otherwise involved in Smith's treatment or dental procedures in any way. Moreover, there is no evidence that Jones was deliberately indifferent to Smith's medical condition nor is there any evidence that Jones delayed or otherwise refused any treatment that she was authorized to provide as a nurse for Smith's care.

As to Defendant Minev, Smith's allegations against him in this case center upon his claim that the URP improperly deferred or delayed his treatment for an outside referral. However, the undisputed evidence shows that on June 3, 2019, a non-defendant medical provider submitted a referral request to the URP, for Smith to see an outside oral surgeon, due to Smith's continued pain and refusal to follow-up with onsite dental. On June 12, 2019, another non-defendant URP member deferred the referral decision, until an x-ray was taken of Smith's mouth. On June 18, 2019, the deferred decision was sent back to the ESP dentist, for x-rays to be taken. Ultimately, on July 17, 2019, the URP approved Smith to be sent to Southern Desert Correctional Center for further dental treatment. Thus, the decision to defer treatment was not based on a refusal to provide treatment or deliberate indifference to Smith's medical condition or care. Rather, the decision to defer was to obtain additional information, i.e., x-rays, prior to referral to outside medical provider. There is no evidence Minev was otherwise

involved or participated in Smith's medical care, such as performing any tooth extractions, or the like.

Based on the above evidence, the Court finds that Defendants have submitted authenticated evidence that establishes they treated and provided necessary dental care to Smith such that they were not deliberately indifferent to his serious medical needs. Therefore, the Court finds Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Smith to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

Smith did not oppose the motion for summary judgment and did not provide any evidence to rebut the authenticated evidence submitted by Defendants in support of the motion for summary judgment. Therefore, Smith has failed to meet his burden on summary judgement that prison officials were deliberately indifferent to his serious medical needs. *See Hallett*, 296 F.3d at 744.

Based on the above, the Court recommends that Defendants' motion for summary judgment as to the medical deliberate indifference claim be granted.[9]

**V.    CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 62), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled

---

[9] Because the Court finds that Smith's claim fails on the merits, the Court need not address Defendants' failure to exhaust, personal participation, or qualified immunity arguments.

"Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 62), be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Defendants Doe URP Members be **DISMISSED** from this action; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: October 21, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**